IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SEMSA D.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | No. 21 C 1937 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff applied for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§416(I), 423, three and a half years ago in October 2018. (Administrative Record (R.) 174-82). She claimed that she became disabled as of September 27, 2017, due to lumber strain, disc degeneration, chronic pain, depression, anxiety, insomnia, and memory loss. (R. 176, 199). Over the next two and a half years, the plaintiff's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. Plaintiff filed suit under 42 U.S.C. § 405(g) on April 12, 2021, and the parties consented to my jurisdiction pursuant to 28 U.S.C. § 636(c) on April 19, 2021. [Dkt. #3]. It is the ALJ's decision that is before the court for review. *See* 20 C.F.R. §§404.955; 404.981. Plaintiff asks the court to remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

I.

A.

Plaintiff was born in Bosnia-Herzegovina on August 15, 1974. She came to the United States in 2002 and lives here as a permanent legal resident. (R. 169-71). She was 46 years old at the time of the ALJ's decision. (R. 10-30). Plaintiff does not know any English. She completed the eighth grade in Bosnia. (R. 37-38). She has three children – 23, 25, and 28 – and she lives with her oldest daughter. (R. 38). While in Bosnia, during the war, her eleven-month-old child was killed. (R. 49).

The plaintiff has an excellent work record, working steadily since she arrived here in 2002 as a hotel housekeeper. (R. 39, 188-89, 201, 212). This work kept her on her feet all day, and was very demanding as it required lifting and carrying of up to fifty pounds. (R. 201, 213).

Given the demands of plaintiff's job as a hotel housekeeper, it's not surprising that she has a history of back trouble. Back in January of 2015, she sought treatment for chronic low back pain and an MRI revealed a bulging disc at L4-5 with stenosis and impingement of the right L5 nerve root. (R. 556). Treatment was physical therapy and epidural injections. (R. 556-64).

On January 18, 2017, plaintiff sought treatment with Dr. Al-Saraf for a strain of her left wrist. (R. 354). X-ray revealed early degenerative changes of the radiocarpal joint with narrowing and an intraosseous cyst. (R. 356-57). Treatment was a course of physical therapy and cold packs. (R. 361). By January 28th, wrist range of motion was decreased with pain, and grip strength was reduced. (R. 379). Work restrictions were: lifting up to 10 pounds frequently, grip with left hand occasionally. (R. 380). Plaintiff returned to full work activity on February 3, 2017. (R. 387).

On May 26, 2017, plaintiff sought treatment from Dr. Al-Saraf for skin issues with her hands. The doctor noted swelling and scaling of the hands with some oozing and purulence. (R. 593).

Plaintiff then suffered chemical irritations on her hands on August 14, 2017. (R. 388). Skin was red, rough, dry, and cracked. (R. 390). Plaintiff was prescribed an ointment and told to wear protective gloves at work. (R. 390-91). By August 25th, the doctor noted only a few dry patches and no raw areas. (R. 396). There were no activity restrictions. (R. 397).

Plaintiff injured her back at work while making the beds on September 26, 2017. (R. 405). Upon examination, range of motion was significantly limited and painful; straight leg raising was positive on the right. (R. 402, 407). X-rays showed mild disc space narrowing at L4-5. (R. 398). Restrictions were lifting up to 5 pounds occasionally, bending/standing/walking occasionally. (R. 412). A course of physical therapy was prescribed. (R. 415, 442-511).

On October 3, 2017, plaintiff reported pain at 5-6/10 radiating down her right leg. It was worst - 10/10 – after walking and when rising and when getting up in the morning. (R. 417). Therapy was progressing more slowly than hoped. (R. 418). Flexion was limited to 40 degrees; sidebending to 15 degrees; straight leg rasing was positive. (R. 421). Restrictions were lifting no more than 10 pounds occasionally; bending/standing/walking occasionally. (R. 422). On October 12, 2017, lumbar range of motion was limited to 40 degrees flexion and 15 degrees side bending. (R.434-35). Plaintiff was walking slowly and bent forward. (R. 435). Lifting restriction was reduced to 5 pounds. (R. 436). At an October 4, 2017 checkup, plaintiff denied any back pain. (R. 587).

MRI of the lumbar spine on December 8, 2017 – which was delayed for weeks due to lagging insurance company approval (R. 521) – showed transitional vertebra at the lumbosacral junction, with partial sacralization of L5 on the left; mild lumbar spondylosis and facet arthrosis, mild L4-5 spinal canal narrowing due to disc bulge with annular tear, minimal disc bulging at L3-4 and L5-S1;

3

mild to moderate neural foraminal encroachment at L3-L5. (R. 855-56).

On December 12, 2017, a medial branch block at L3-4 and L4-5 was ordered, but plaintiff's insurance company delayed that procedure for six weeks. (R. 528, 530, 569). Dr. Murtaza also hoped to proceed with a rhizotomy after that for more permanent relief. (R. 569). It was finally performed on January 25, 2018. (R. 685). At follow-up on February 16, 2018, plaintiff reported 70% relief and a reduction of pain to 5/10. (R. 530). It was noted that the hotel would not allow plaintiff to return to work with her restrictions. (R. 530).

Plaintiff's course of physical therapy was finally completed on February 28, 2018. (R. 442). Plaintiff reported feeling much better and ready to go back to work. (R. 442). She had no radiculopathy and could walk for 40 minutes without resting. (R. 442). She was performing at her previous level of activity. (R. 442). Range of motion decrease was minimal; strength was 4-4+/5 throughout. (R. 442).

On March 30, 2018, plaintiff reported some increase of pain and tenderness along the lumbar spine. Upon examination, Dr. Murtaza noted pain increased with extension of facet loading. Motor and sensory exams were grossly normal. Gait was normal and straight leg raising was negative. Dr. Al-Saraf was awaiting approval for a radio frequency ablation and conclusive treatment of rhizotomy. (R. 532). The doctor noted that plaintiff wanted to get back to work as soon as possible. (R. 532)

On April 15, 2018, plaintiff underwent a Liberty Mutual Insurance Company exam in connection with her Workers' Compensation Claim. The physician noted that improvement post-medial branch blocks lasted about a month. (R. 539). Back pain was again constant and rated at 7/10. Plaintiff was walking with an antalgic gait. (R. 539). Four Waddell's signs were positive for

4

organic impairment, including tenderness along the spine and straight leg raising. (R. 540). Lumbar flexion and extension were significantly limited to just 5 degrees. (R. 539). The doctor interpreted the MRI as showing some disc desiccation and loss of height at L4-5, nothing significant at L5-S1, diffuse central disc protrusion at L4-5 causing some stenosis and perhaps contact with L5 nerve roots. He felt the x-ray was unremarkable. (R. 540). The doctor thought the plaintiff could do work involving lifting up to 15 pounds with no repetitive bending. In a month, he thought she could go back to regular duty, lifting 50 pounds. (R. 540-41).

    Plaintiff had another exam on April 19, 2018. She reported low back pain, radiating down the right leg. After exam – which included positive straight leg raising – and review of studies, Dr. Herman said he disagreed with the insurance company doctor the plaintiff could return to regular duty and felt, instead, she was a good candidate for a lumbar microdiscectomy (R. 598-99). He said she was unable to work through August 5, 2018. (R. 849). Exam was unchanged on May 22nd; straight leg raising was positive. (R. 852). Dr. Herman adjusted plaintiff's return to work date to July 17, 2018. On May 24, 2018, Dr. Murtaza performed a radiofrequency ablation at trigger point injections at L3-4 and L4-5. (R. 573-74). On November 17, 2018, plaintiff was still complaining of back pain, with onset of neck pain and dizziness as well. (R. 648). Prescriptions were tramadol, ctclobenzaprine, naproxen, and zolpidem. (R. 648). At a follow-up on February 13, 2019, plaintiff complained of chronic back pain that moderately limited her activity and affected her sleep. (R. 644). Upon examination, Dr. Seferovic noted decreased extension, flexion, and rotation. (R. 646). On July 23, 2020, however, examination notes included normal gait and station, normal motor exam. (R. 705).

The medical record also includes an opinion from another of plaintiff's treating doctors, Dr. Elkum, in an August 5, 2020 letter to plaintiff's counsel. Although the record includes no treatment notes, the doctor says he has been treating plaintiff for two years for PTSD, which stemmed from the war in Bosnia and the loss of plaintiff's child in that tragedy. It had been dormant for years, but resurfaced when plaintiff injured her back. (R. 756). Dr. Elkum noted there was evidence of depression and anxiety. She was cognitively intact, had no delusional or hallucinatory experiences, but did not abstract effectively or calculate well and was irritable and tired emotionally. The doctor felt plaintiff was totally disabled from returning to work of any kind. (R. 757).

There is little or no evidence of treatment for depression or anxiety. On August 25, 2017, Dr. Al-Saraf noted that mood, affect, judgment, and insight were all normal. (R. 396). On September 27, 2017, psychiatric review was again normal. (R. 401, 402). Review was the same on October 5th and 12th. (R. 421). Psychiatric review was again negative on April 19, 2018. (R. 597) Plaintiff denied depression or anxiety on November 12, 2018. (R. 627).

A consultative exam on January 22, 2019 resulted in a diagnosis of major depressive disorder, anxiety disorder and post-traumatic stress disorder (PTSD). (R. 638; 644). Plaintiff was noted to have an adequate fund of knowledge and judgment, but limited insight. (R. 638). Plaintiff reported some memory issues at that time, but she was able to outline her history reasonably well. (R. 637). On February 13, 2019, plaintiff again denied any depression or anxiety. (R. 645).

**B.**

After an administrative hearing at which plaintiff, represented by counsel, testified through an interpreter, and a vocational expert testified, the ALJ determined the plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; depression; post-traumatic stress

disorder (PTSD) and anxiety. (R. 16). The ALJ judged plaintiff's additional impairments – hyperlipidemia, headaches, vitamin D deficiency, and gastroesophageal reflux disease – to be non-severe. (R. 16). The ALJ then found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ specifically considered the requirements for the Listings covering disorders of the spine (1.04), and mental impairments (12.04, 12.06, and 12.07). (R. 16-17). In understanding, remembering, or applying information, and adapting or managing oneself, the ALJ found the plaintiff had mild limitations. In interacting with others and concentrating, persisting, or maintaining pace, the ALJ found the plaintiff had moderate limitations. (R. 17-18).

      The ALJ then determined that the plaintiff could perform light work with the following limitations:

> the [plaintiff] can never climb ladders, ropes or scaffolds. She can occasionally climb ramps and stairs, stoop, kneel, crouch and crawl. The [plaintiff] can understand, remember and carryout simple, routine and repetitive instructions. She can use judgement limited to simple work related decisions. The [plaintiff] can occasionally interact with supervisors, coworkers and the general public.

(R. 18). The ALJ then reviewed plaintiff's allegations and found that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 19). The ALJ summarized the medical evidence, stating that the objective medical evidence "failed to show significant findings." (R. 19). As for the plaintiff's mental impairments, the ALJ noted that she had a normal mood on four occasions and did

7

not have suicidal or homicidal ideations. (R. 20).

As for medical opinions, the ALJ said that the opinions from the state agency reviewing physicians that the plaintiff could perform light work with some additional postural limitations "persuasive" as they were generally supported by their explanations and evidence as a whole. (R. 20-21). The ALJ found the opinion from the insurance company doctor that her lifting restrictions were temporary and that she could return to regular duty in a month "generally persuasive" because it was consistent with the medical evidence. (R. 2). The ALJ found the opinion from plaintiff's treating doctor, Dr. Herman, that plaintiff could not return to full duty "unpersuasive" because plaintiff had normal strength, gait, and sensation. (R. 21). The ALJ found the opinions from plaintiff's other treating physician, Dr. Al-Saraf, that plaintiff could only lift up to five pounds and later ten "somewhat persuasive." The ALJ explained that they were supported by examination findings and generally consistent with the record. Nevertheless, the ALJ rejected the opinions because plaintiff had normal motor strength and gait and because the restriction Dr, Al-Saraf provided "seemed to temporary [sic]." (R. 21-22). The ALJ rejected the many work restriction notices as unpersuasive because they were inconsistent with the medical evidence. (R. 22).

The ALJ found the reviewing psychologists' opinions that plaintiff retained the capacity to perform 1 to 2 step tasks but not complex tasks persuasive because they were supported by the psychologists' explanations and generally consistent with the record. (R. 22-23). The ALJ rejected the opinion from plaintiff's treating psychiatrist, Dr. Elkum, that she was unable to work because it was inconsistent with the medical evidence. Finally, the ALJ found the report from the consultative psychologist, Dr. Kelly, generally persuasive. (R. 23).

The ALJ then found, relying on the testimony of the vocational expert, that plaintiff could perform her past relevant work as a hotel housekeeper. While the plaintiff's actual work as hotel housekeeper was heavy, the vocational expert testified that the job is considered light work as it is generally performed (DOT 323.687-014). (R. 24). Accordingly, the ALJ found plaintiff not disabled and not entitled to benefits under the Act. (R. 24-25).

## II.

If the ALJ's decision is supported by "substantial evidence," the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). To determine whether substantial evidence exists, the court reviews the record as a whole, *Biestek v. Berryhill*, – U.S. –, –, 139 S. Ct. 1148, 1154 (2019), but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Beardsley*, 758 F.3d at 837. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits," the court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997); *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017).

The substantial evidence standard is a low hurdle to negotiate. *Biestek*, 139 S. Ct. at 1154; *Karr*, 989 F.3d at 511 (7th Cir. 2021). If reasonable minds could differ, the court must defer to the ALJ's weighing of the evidence. *Zoch*, 981 F.3d at 602. But, in the Seventh Circuit, the ALJ also has an obligation to build what is called an "accurate and logical bridge" between the evidence and

9

the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). Even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that logical bridge. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)(". . . we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."). Of course, this is a subjective standard. One reader might see such a daunting expanse between evidence and conclusion that they would need an engineering marvel like the Mackinac Bridge to get from one side to the other. Another reader might not be as challenged and see nothing more than a trickle of a creek they could traverse with a few well-placed rocks. The subjectivity of the requirement makes it difficult for ALJs hoping to write acceptable decisions that stand up to judicial scrutiny when challenged.

At the same time, the Seventh Circuit has also called this requirement "lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). "If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985). The ALJ has done enough here.

### III.

The plaintiff argues the ALJ's opinion denying her benefits must be remanded for three reasons. First, the plaintiff contends the ALJ failed to adequately consider whether she met a listed impairment. Second, plaintiff claims that the ALJ did not consider the medical opinions from three of her treating physicians. And, finally, the plaintiff argues that the ALJ's RFC finding was not supported by substantial evidence. Any other argument plaintiff might have made is, of course, waived. *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000).

### A.

Plaintiff focuses her criticism of the ALJ's decision on her determination that plaintiff's impairments do not meet the listings, particularly Listing 8.05 and Listing 1.04. Plaintiff begins by complaining that the ALJ erred by not addressing Listing 8.05 for dermatitis. It's a surprising argument, because this is the first time in this entire process, from application to federal court, that anyone hears of it. Plaintiff has been represented by counsel since at least March of 2019. (R. 107); *see Schloesser v. Berryhill*, 870 F.3d 712, 721 (7th Cir. 2017)(court presumes that claimant represented by counsel made her strongest case). Plaintiff made no mention of it at the hearing. Plaintiff's counsel didn't mention it – although he alleged other listings as possibly being met. (R. 61). He never asked about it or posed any manipulation limitations to the vocational expert. (R. 58-60). Plaintiff's counsel submitted a brief to the ALJ and, even then, made no mention of dermatitis or Listing 8.05. (R. 295-300).

Waiver applies in administrative proceedings. *See, e.g., Wood v. Thompson*, 246 F.3d 1026, 1033 (7th Cir. 2001)("He did not rely on this policy in his arguments before the ALJ or the Medicare Appeals Council, and he has therefore waived this argument."); *Meanel v. Apfel*, 172 F.3d 1111,

11

1115 (9th Cir. 1999)("... at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal."); *United States v. Menendez*, 48 F.3d 1401, 1413 (5th Cir. 1995)("... the doctrine of waiver in administrative law parallels the well-established rule that appellate courts will not consider arguments not raised before the trial court."); *Eagle Eye Fishing Corp. v. U.S. Dep't of Com.*, 20 F.3d 503, 505 (1st Cir. 1994)(" The doctrine of administrative waiver is a subset of the broader doctrine of procedural default. It teaches that, '[i]n the usual administrative law case, a court ought not to consider points which were not seasonably raised before the agency.'"). Here, plaintiff's counsel made no mention, at any point in the administrative proceedings, despite multiple opportunities, of dermatitis or Listing 8.05. The argument should be deemed waived.

Even if the point were not deemed waived, the plaintiff has the burden of establishing that an impairment meets a listing. *Wilder v. Kijakazi*, 22 F.4th 644, 652 (7th Cir. 2022); *Deloney v. Saul*, 840 F. App'x 1, 5 (7th Cir. 2020); ("[Plaintiff] had the burden of proving disability at step three. She was represented by counsel, and her attorney had the ability to clarify or develop the record further on this point with the expert."). Plaintiff and her attorney are the most familiar with the medical evidence. It's certainly fair to expect them to come up with listing arguments and evidence to support them – not the ALJ. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987)(". . . is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so."). But, these deficiencies aside, the newly fashioned argument is rather poorly crafted.

Plaintiff's counsel claims the evidence shows plaintiff's dermatitis "interfered with her motion of joints 'that very seriously limit her use of more than one extremity'—her right and left

hands" and "very seriously limit her[s] ability to do fine and gross motor movement." [Dkt. #11, at 11]. But none of the evidence mentions any limitations in fine manipulation. None of it suggests that plaintiff's dermatitis hampers her ability to move her hands or hold things. In fact the evidence plaintiff's counsel cites says nothing of the kind:

> R. 371-373(wrist strain, no significant skin changes, no deformity noted on hands or fingers), 376 (wrist strain, no significant skin changes)
>
> R. 379-80 (wrist strain, hand and fingers appear normal)
>
> R. 402-06(hands and fingers: appearance normal, no deformity, no tenderness, full range of motion appear normal)
>
> R. 411-413( hands and fingers: appearance normal, no deformity, no tenderness, full range of motion)
>
> R.434-35 (wrists: appearance normal, no deformity, no tenderness, full range of motion)
>
> R. 530, 560, 676 (no mention of any hand issues).

As significantly, the lone case plaintiff's counsel relies on for his dermatitis listing argument, *Angela L. I. v. Comm'r of Soc. §.*, No. 18-CV-1816-DGW, 2019 WL 2124224, at *6 (S.D. Ill. May 15, 2019), ought to have been a signal to counsel that he should not advance an argument he had every opportunity to raise in the administrative proceedings but either chose not to, or simply failed to do so. The court in *Angela L. I.* made clear that the plaintiff there raised the dermatitis listing in the administrative proceedings and, to make things all the more clear, flatly rejected the Commissioner's reliance on a case where "the plaintiff did not even identify psoriasis as a condition contributing to her disability at the hearing." 2019 WL 2124224, at *6 (citing *Thornton v. Colvin*, 2014 WL 2515226, at *3 (S.D. Ind. 2014)). That's the same boat the plaintiff is in here; she didn't raise her dermatitis contention at the hearing.

The plaintiff next argues that the ALJ was too dismissive in her consideration of whether plaintiff met Listing 1.04. This argument isn't such a surprise, as it focuses on a claim plaintiff has maintained all along and the impairment that kept her from returning to her hotel housekeeping job. Listing 1.04 requires compromise of a nerve root or the spinal cord with one of the following:

> (A) Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> (B) Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> (C) Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04. It has to be said that the ALJ's discussion was brief, but it was a far cry from the type of assessment rejected in not *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). The ALJ here set forth the listing's requirements and cited evidence to show they were not met:

> Listing 1.04 was not met because the record did not show that the claimant experienced muscle atrophy, motor/strength loss, sensation loss or reflex loss (Exhibits 4F/11, 15, 17; 5F/7, 36; 12F/17; 14F/8, 42; 16F/5, 11). In addition, the record did not show the claimant had spinal arachnoiditis. Finally, the record did not show the claimant experienced an inability to ambulate effectively (Exhibits 2F/76; 4F/15, 17, 5F/36; 12F/17; 16F/5, 11). Consequently, listing 1.04 was not met.

(R. 16). Against all those records indicating normal findings, as to 1.04(A), plaintiff cites one instance where a doctor found her right Achilles reflex was diminished, one instance where a doctor noted some plantar flexion weakness, and a few notations of positive straight leg raising. [Dkt. #11,

14

at 12-13]. But, these are sporadic findings, as the many normal findings the ALJ relied upon show. Listing 1.04(A) requires that a plaintiff has all the findings set forth and not just one or two of them here and there. The reflex loss and weakness findings plaintiff points to had to have been consistent over the course of 12 months. *Massaglia v. Saul*, 805 F. App'x 406, 410 (7th Cir. 2020). They were not.

Plaintiff also suggests she meets Listing 1.04(C) because there are a number of instances in the record where doctors note she has an antalgic gait. [Dkt. #11, at 13]. But a limp does not satisfy the listing's requirement of inability to ambulate effectively. Under § 1.00(B)(2)(b)(2) of Appendix 1, "[i]nability to ambulate effectively means an *extreme limitation* of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." (Emphasis supplied). This level of impairment "is defined generally as having insufficient lower extremity functioning ... to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities" such as a walker, two crutches, or two canes. § 1.00(B)(2)(b)(2). *Kastner v. Astrue*, 697 F.3d 642, 650 (7th Cir. 2012); *Wurst v. Colvin*, 520 F. App'x 485, 488 (7th Cir. 2013). The ALJ correctly concluded there was no evidence of any of that.

Additionally, it's worth noting that not a single doctor – not from the state agency, the insurance company, and not any of plaintiff's own treating physicians – said plaintiff was disabled or could not work. They said that she could perform work activity, albeit at varying exertional levels and with varying restrictions. From time to time, they may have opined that she could not return to her hotel housekeeping job as she performed it, or could not return to it for a few weeks, but the ALJ didn't think she could do either. The ALJ found plaintiff could perform hotel housekeeping work

15

as it was generally performed in the national economy. *See, e.g., Ray v. Berryhill*, 915 F.3d 486, 491 (7th Cir. 2019)("A claimant is not disabled if he can do his past relevant work either in the manner he performed it before the impairment or in the manner it is generally performed in the national economy."); *Getch v. Astrue*, 539 F.3d 473, 482 (7th Cir. 2008)(". . . the ALJ need not conclude that the claimant is capable of returning to the precise job he used to have; it is enough that the claimant can perform jobs substantially like that one.").That means at the light exertional level, which is significantly less demanding than plaintiff's specific job was and less demanding than the job plaintiff's doctors were evaluating her for. And that point provides a segue into plaintiff's next argument.

## B.

The plaintiff also complains that the ALJ failed to consider the medical opinions of the plaintiff's treating doctors, particularly Drs. Herman, Al-Saraf, and Elkum. [Dkt. #11, at 14-16]. But that's not true, as the ALJ clearly considered and discussed all three doctors' opinions. (R. 21-23). An ALJ can accord less weight to a treating physician's opinion as long as she provides good reasons for doing so. *Israel v. Colvin*, 840 F.3d 432, 437 (7th Cir. 2016); *Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016); *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010). The ALJ did that here. She noted that Dr. Herman's opinion that plaintiff could not return to work in May 2018 inconsistent with his findings and with the medical evidence overall. She found Dr. Al-Saraf's opinion that plaintiff could lift up to ten pounds occasionally and push/pull up to twenty pounds occasionally somewhat persuasive, but not completely supported by findings of normal motor strength and gait in repeated examinations. (R. 22). Those are appropriate reasons for giving medical opinions less weight. *See* 20 C.F.R. § 404.1527(c)(4); *Prill v. Kijakazi*, 23 F.4th 738, 751 (7th Cir. 2022); *Zoch*

*v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020); *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008).

It's also worth noting that Dr. Herman, like all the physicians on record, didn't indicate that plaintiff was disabled. Indeed, he felt she could return to full duty – and in plaintiff's job, that involved some heavy lifting – first by August 5, 2018 (R. 849) and following another examination, by July 17, 2018. (R. 852).

Similarly, the ALJ found Dr. Elkum's opinion that plaintiff could not work for the foreseeable future due to anxiety and depression inconsistent with the medical record. The ALJ pointed to exam after exam where it was noted that plaintiff had normal mood, normal memory, normal judgment, and normal cognition. (R. 17, 20, 23). Again, it is appropriate for an ALJ to reject a medical opinion when it is inconsistent with the record. It was all the more appropriate to do so here because there appear to be no treatment notes from Dr. Elkum whatsoever; plaintiff certainly doesn't direct the court to any. [Dkt. #1, at 15]. A medical opinion unsupported by treatment notes is of little value. *Pavlicek v. Saul*, 994 F.3d 777, 781 (7th Cir. 2021); *Kuykendoll v. Saul*, 801 F. App'x 433, 437–38 (7th Cir. 2020); *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *Elizabeth G. v. Kijakazi*, No. 20 C 1799, 2022 WL 326966, at *6 (N.D. Ill. Feb. 3, 2022).

## C.

Finally, the plaintiff argues that the ALJ did not take into account the issues she has with her hands and her lower back in determining her residual functional capacity. [Dkt. #11, at 16]. As already discussed, plaintiff's issues with her hands were limited, isolated instances. In the main, the examination reports regarding plaintiff's hands were unremarkable. And, as also already discussed, opinions regarding plaintiff's limitations due to her back impairment were unanimous insofar as none suggested she was unable to work. Indeed, plaintiff's own physician. Dr. Herman, indicated

17

plaintiff would be able to far surpass the limitations the ALJ found her subject to by August or even July of 2018. In formulating an RFC, an ALJ need only account for those limitations supported by the medical evidence. *Vang v. Saul*, 805 F. App'x 398, 402 (7th Cir. 2020); *Jozefyk v. Berryhill*, 923 F.3d 492, 497–98 (7th Cir. 2019); *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009). That is what the ALJ did here. Furthermore, the state agency reviewer's opinions provide substantial evidence to support the ALJ's RFC. *See, e.g., Pavlicek*, 994 F.3d at 783; *Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019); *Baldwin v. Berryhill*, 746 F. App'x 580, 584 (7th Cir. 2018).

## CONCLUSION

For the foregoing reasons, the plaintiff's motion for reversal [Dkt. #11] is denied, and the defendant's motion for affirmance [Dkt. #15] is granted, and the ALJ's decision is affirmed.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 6/1/22